1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JASON DAVIS,

                 Petitioner,

    v.

PATRICK GLEBE,

                 Respondent.

Case No. C15-699-RSL-JPD

REPORT AND RECOMMENDATION

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

       Petitioner Jason Davis is a state prisoner who is currently confined at the Monroe

Correctional Complex in Monroe, Washington.  He seeks relief under 28 U.S.C. § 2254 from a

2011 King County Superior Court judgment and sentence.  Respondent has filed an answer

responding to petitioner's federal habeas claims, and has submitted relevant portions of the state

court record.  This Court, having carefully reviewed petitioner's petition, respondent's answer,

and the balance of the record, concludes that petitioner's petition for writ of habeas corpus

should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

## FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's conviction as follows:

> Jason Waldon Davis and Stacy Hill were involved in a dating relationship and lived together for a number of years. By early 2010, their romantic relationship had ended. Davis moved out of Hill's house over the weekend of April 3 and 4.
>
> Late in the evening of April 5, Hill and Chad Andrews were in her bedroom with the door locked. Davis entered the house uninvited and with a knife. Davis broke down Hill's bedroom door and attacked Andrews in the back with the knife, stabbing him between 11 and 14 times.
>
> On April 8, the State charged Davis with assault in the first degree with a deadly weapon and burglary in the first degree. The court entered an order prohibiting Davis from having contact with either Andrews or Hill.
>
> On March 18, 2011, the State filed an amended information to add a charge of attempted murder in the second degree with a deadly weapon, as well as a deadly weapon enhancement to the burglary charge.
>
> On April 22, Davis entered an Alford[1] plea to the charge of assault in the first degree with a deadly weapon. During the plea hearing, the prosecutor and the court asked Davis twice whether he had been threatened or coerced into pleading guilty. In response, Davis twice unequivocally denied that he was being threatened. After accepting the plea as knowingly, intelligently, and voluntarily made, the court lifted the no-contact order with Hill.
>
> On June 10, Davis filed a motion to withdraw his guilty plea. Davis claimed his plea was not voluntary because Andrews repeatedly made threats to kill him and harm his friends. The court held an evidentiary hearing. Stacy Hill, Davis's mother Kim Myhre, and Davis testified. The court admitted into evidence transcripts of telephone calls Davis made from the jail to Hill, Myhre, and Hill's mother.
>
> Hill testified that Andrews repeatedly threatened to kill Davis and that she told Davis's mother about the threats.

---

[1] [Court of Appeals footnote 1] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

REPORT AND RECOMMENDATION - 2

Myhre testified that when she came to Hill's house to remove Davis's belongings, Andrews told her, "[Y]ou better hope he goes to prison for a long time because he's safer in there than he is on the streets because me and my posse are going to take care of him." Myhre also testified that she told Davis about the threat she heard from Andrews as well as those reported to her by Hill.

Davis testified that he pleaded guilty for a number of reasons. Specifically, Davis said he wanted the case to end, his attorneys told him he had no defense, he wanted to see Hill's son, and he knew the protection order would be lifted if he pleaded guilty. Davis testified that he feared Hill, her son, and his friend John Mayfield would be in danger if Hill testified at trial. Davis testified that he pleaded guilty to placate Andrews and that he would not have pleaded guilty if Andrews had not threatened him.

Davis also introduced into evidence transcripts of several telephone calls he made from the jail to Myhre and Hill. In a telephone call to his mother on April 6, Davis referred to "death threats" by "this guy who wants to kill me," saying that "if that's his position and he wants to do that . . . I'm kind of okay with that . . . in the sense that . . . let me get out, . . . get a No-Contact Order and then if he gets anywhere near me then . . . I'll just call the police." After entering the plea, Davis explained his decision to plead to Myhre, noting "other things we can't talk about," and then saying, "[T]he only reason I took it was because . . . the other option . . . was to go in to trial with literally no defense."

In a telephone call to Hill on May 8, 2011, Davis told Hill that her "version of the truth was maybe not as close to reality as would have been helpful or as I would have liked," and "I can understand why you may have been confused about some things." Davis also told Hill she could help him "if this all goes to trial."

The court issued a detailed, 10-page written order denying Davis's motion to withdraw his plea. The court found that Davis's "explanation of how the threats caused him to plead guilty makes no sense" and was "not credible." The court found that Davis did not fear danger to himself from Andrews' threats but feared that Andrews would not testify truthfully. The court also found that Davis's "assertion that he pled guilty to protect Stacy Hill, her son [R.H.], and John May[field] is not credible." The court concluded:

> [T]he true motivation for defendant's motion to withdraw his plea is that after the no contact order was lifted and he attempted to tamper with Ms. Hill's testimony, he came to believe he could win his case with a claim of self-defense.

REPORT AND RECOMMENDATION - 3

The court also states that the plea bargain substantially reduced Davis's standard-range sentence.  The court determined that Davis was not coerced into pleading guilty by Andrews' threats and denied the motion to withdraw the guilty plea.

(Dkt. 27, Ex. 3 at 1-4.)

PROCEDURAL BACKGROUND

Petitioner was sentenced on August 19, 2011 to a term of 93 months confinement on the first degree assault charge and to an additional 24 month deadly weapon enhancement, for a total of 117 months confinement.  (*See id.*, Ex. 1.)  Petitioner appealed his judgment and sentence to the Washington Court of Appeals.  (*See id.*, Exs. 4-6.)  The single issue raised by petitioner on direct appeal was that the trial court erred when it denied his motion to withdraw his guilty plea. (*See id.* at 4-5.)  On November 19, 2012, the Washington Court of Appeals issued an unpublished opinion affirming petitioner's conviction.  (*Id.*, Ex. 3.)  Petitioner thereafter filed a motion for reconsideration of the Court of Appeals' decision denying his direct appeal, but that motion was denied without comment on February 25, 2013.  (*Id.*, Exs. 7-8.)  Petitioner next sought review in the Washington Supreme Court.  (*Id.*, Ex. 9.)   However, petitioner's petition for review was not timely filed and his motion for extension of time was denied, thereby ending proceedings in the Supreme Court.  (*Id.*, Exs. 10-11.)  The Court of Appeals issued its mandate terminating petitioner's direct review on October 30, 2013.  (*Id.*, Ex. 12.)

On October 6, 2014, petitioner filed a personal restraint petition in the Washington Court of Appeals in which he argued that the deadly weapon enhancement violated double jeopardy principles and that he was denied effective assistance of counsel during plea negotiations.  (*See id.*, Ex. 13.)  On November 24, 2014, the Court of Appeals issued an order dismissing the petition.  (*Id.*, Ex. 14.)  Petitioner thereafter filed a motion for discretionary review in the Washington Supreme Court in which he again argued that he was denied effective assistance of

counsel in plea negotiations and that the deadly weapon enhancement he received violated double jeopardy principles.  (Dkt. 27, Ex. 15.)

The Washington Supreme Court issued a ruling denying review on July 28, 2015.  (*Id*., Ex. 16.)  And, the Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on October 7, 2015.  (*Id*., Ex. 17.)  Petitioner now seeks federal habeas review of his conviction.

<u>GROUNDS FOR RELIEF</u>

Petitioner identifies the following three grounds for relief in his petition for writ of habeas corpus:

**GROUND ONE:**     The court erred in denying Mr. Davis' motion to withdraw his plea.

**GROUND TWO:**     The weapon enhancement violates Double Jeopardy.

**GROUND THREE:**  Counsel was ineffective during plea negotiations.

(*See* Dkt. 8 at 5-8.)

<u>DISCUSSION</u>

Respondent concedes in his answer to the petition that petitioner exhausted his second and third grounds for relief, but argues that petitioner failed to exhaust his first ground for relief because he failed to properly raise the claim at every level of the state courts' review. Respondent further argues that petitioner's first ground for relief is now procedurally barred under Washington law, and that his second and third grounds for relief were reasonably rejected by the state courts.  Petitioner has not filed any response to respondent's answer.

REPORT AND RECOMMENDATION - 5

Exhaustion and Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted).  In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims.  *Id*.

A habeas petitioner who fails to meet a state's procedural requirements for presenting his federal claims deprives the state courts of the opportunity to address those claims in the first instance.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  Presenting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation of the claim for exhaustion purposes.  *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), *citing Castille v. Peoples*, 489 U.S. 346, 351 (1989).

REPORT AND RECOMMENDATION - 6

Petitioner asserts in his first ground for relief that the trial court erred in denying his motion to withdraw his guilty plea.  Respondent argues that petitioner failed to exhaust his first ground for relief because he did not raise his claim in the Washington Supreme Court and therefore failed to invoke one complete round of the state's established appellate review process as is necessary to satisfy the exhaustion requirement.

The state court record reveals that petitioner presented his first ground for relief to the Washington Court of Appeals on direct review.  However, though petitioner included a version of the same claim in his petition for review to the Washington Supreme Court, the petition for review was deemed untimely and, thus, the merits of the claim were never considered by the court.  (*See* Dkt. 27, Exs. 9, 11.)   Petitioner again made reference to the trial court's order on his motion to withdraw his guilty plea in his personal restraint petition, but he did not appear to assert any independent claim of trial court error concerning the guilty plea.  (*Se id*., Ex. 13 at 1, 13-28.)  Petitioner confirms this fact in his motion for discretionary review where he states that he did not intend to re-raise the issue concerning the duress challenge to his guilty plea in his personal restraint petition, and that he only reasserted a portion of the argument for exhaustion purposes.  (*Id*., Ex. 15 at 3.)  The state courts, on collateral review, did not address any claim of trial court error relating to petitioner's motion to withdraw his guilty plea which reinforces the conclusion that petitioner was not deemed to have presented any such claim in those proceedings.  As the record makes clear that petitioner never fairly presented his first ground for relief to the Washington Supreme Court for consideration, this Court must conclude that the claim was not properly exhausted.

Respondent argues that petitioner, having failed to properly exhaust his first ground for relief, would now be barred from presenting his claim to the state courts under RCW 10.73.090

REPORT AND RECOMMENDATION - 7

(time bar), RCW 10.73.140 (successive petition bar), and RAP 16.4(d).  RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final.  Petitioner's conviction became final for purposes of state law on October 30, 2013, the date the Court of Appeals issued its mandate terminating direct review.  It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claim.  *See* RCW 10.73.090.  In addition, because petitioner previously pursued a collateral challenge in the state courts, the state courts are not likely to entertain another such challenge from petitioner.  *See* RCW 10.73.140. This Court therefore concludes that petitioner has procedurally defaulted on his first ground for relief.

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  Petitioner makes no effort to demonstrate cause or prejudice for his default.  He therefore fails to demonstrate that his claim that the trial court erred in denying his motion to withdraw his guilty plea is eligible for federal habeas review.  Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect to his first ground for relief.

<u>Standard of Review for Exhausted Claims</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at 407-09.  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).  A state court's decision may be overturned only if the application is "objectively unreasonable."  *Id*.

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id*. at 71-72.  "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."  *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen*, 131 S. Ct. at 1398-1400, 1415.  If a habeas petitioner challenges the determination of a factual issue by a state court, such

REPORT AND RECOMMENDATION - 9

determination shall be presumed correct, and the applicant has the burden of rebutting the

presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

<u>Ground Two:  Double Jeopardy</u>

Petitioner asserts in his second ground for federal habeas relief that his rights under the

Double Jeopardy Clause were violated by a weapons enhancement which increased the length of

his sentence by 24 months.  (*See* Dkt. 8 at 7, 48-54.)

The Fifth Amendment to the United States Constitution guarantees that no person shall

"be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend

V.  The Double Jeopardy Clause protects against three distinct abuses:  a second prosecution for

the same offense after conviction, a second prosecution for the same offense after acquittal, and

multiple punishments for the same offense.  *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing

*North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  Where multiple punishments are imposed

in a single criminal trial, the role of the Double Jeopardy Clause "is limited to assuring that the

court does not exceed its legislative authorization by imposing multiple punishments for the

same offense."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (citing *Gore v. United States*, 357 U.S.

386 (1958); *Bell v. United States*, 349 U.S. 81 (1955); *and Ex parte Lange*, 18 Wall 163 (1874)).

*See also*, *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences

imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing

court from prescribing greater punishment than the legislature intended.")

Petitioner presented his double jeopardy claim to the state courts in his personal restraint

proceedings and the state courts rejected that claim.  The Washington Supreme Court

Commissioner explained her conclusion as follows:

REPORT AND RECOMMENDATION - 10

Mr. Davis argues that the deadly weapon sentence enhancement constitutes double jeopardy in light of the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), where the Court held that facts that increase the mandatory minimum sentence for a crime must be found by a jury beyond a reasonable doubt. *Id*. at 2158. In so holding, the Court overruled its decision in *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). But *Alleyne* does not concern double jeopardy. Under double jeopardy analysis, the central question is whether the legislature intended the punishment imposed. *See State v. Kelley*, 168 Wn.2d 72, 77, 226 P.3d 773 (2010). Since the legislature plainly intended to impose a deadly weapon sentence enhancement even when use of a deadly weapon is an element of the underlying crime, such an enhancement does not violate double jeopardy principles. *Id*. at 78-80. The acting chief judge therefore properly dismissed the petition.

(Dkt. 27, Ex. 16 at 3.)

The decision of the state courts is entirely consistent with federal law. A review of applicable Washington state law makes clear that the Washington legislature intended that an individual found to have committed a felony offense while armed with a deadly weapon would receive additional time. *See* RCW 9.94A.533(4). The legislature also made clear that the deadly weapon enhancements were mandatory and were to run consecutively to all other sentencing provisions. RCW 9.94A.533(4)(a). Thus, as the Washington Supreme Court properly concluded, petitioner's deadly weapon enhancement did not violate double jeopardy principles because petitioner's punishment did not exceed that which was clearly intended by the legislature. Petitioner's federal habeas petition should therefore be denied with respect to his second ground for relief.

<u>Ground Three:  Ineffective Assistance of Trial Counsel</u>

Petitioner asserts in his third ground for relief that his attorneys rendered ineffective assistance during plea negotiations when they erroneously told him that he had no defense to the burglary charge. (*See* Dkt. 8 at 8, 67-70.) Petitioner maintains that if he had known he had a

REPORT AND RECOMMENDATION - 11

1  defense to that charge, and to the accompanying deadly weapon enhancement, he would have

2  gone to trial.  (Dkt. 8 at 69.)  Petitioner reasons that if he were to "beat" the burglary charge,

3  either by having the charge dismissed prior to trial or by being acquitted on the charge at trial, he

4  would have had a lower standard sentencing range even if he had been convicted on the

5  attempted murder charge.[2]  (*Id*.)

6      Due process requires that a guilty plea be both knowing and voluntary.  *Boykin v.*

7  *Alabama*, 395 U.S. 238, 242 (1969).  "The longstanding test for determining the validity of a

8  guilty plea is 'whether the plea represents a voluntary and intelligent choice among the

9  alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56

10  (1985)(quoting *Alford v. North Carolina*, 400 U.S. 25, 31 (1970)).  A defendant who enters a

11  guilty plea on advice of counsel may only attack the voluntary and intelligent character of the

12  plea by demonstrating that the advice received from counsel was not within the range of

13  competence demanded of attorneys in criminal cases.  *Shah v. United States*, 878 F.2d 1156,1158

14  (9th Cir. 1989).

15      Ineffective assistance of counsel claims arising out of the plea process are evaluated

16  under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Hill*, 474

17  U.S. at 56.  Under *Strickland*, a defendant must prove (1) that counsel's performance fell below

18  an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for

19  counsel's error, the result of the proceedings would have been different.  *Strickland*, 466 U.S. at

20  687.  There is a strong presumption that counsel's performance fell within the wide range of

21  reasonably effective assistance.  *Id*. at 689.

22

23      [2]  While respondent appears to construe petitioner's ineffective assistance of counsel claim as also asserting that petitioner had a self-defense argument with respect to the assault charge (*see* Dkt. 24 at 20), the court finds no reference to such a claim in petitioner's supporting materials (*see* Dkt. 8, Ex. 2).

REPORT AND RECOMMENDATION - 12

1    With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

2 performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.

3 Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  "A fair

4 assessment of attorney performance requires that every effort be made to eliminate the distorting

5 effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

6 evaluate the conduct from counsel's perspective at the time."  *Id*.  In order to prevail on an

7 ineffective assistance of counsel claim, a petition must overcome the presumption that counsel's

8 challenged actions might be considered sound strategy.  *Id*.

9    The second prong of the *Strickland* test requires a showing of actual prejudice related to

10 counsel's performance.  In order to satisfy the "prejudice" requirement of the *Strickland* standard

11 in the context of guilty pleas, a petitioner must demonstrate that it is reasonably probable that,

12 but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to

13 trial."  *Hill*, 474 U.S. at 59.

14    While the Supreme Court established in *Strickland* the legal principles that govern claims

15 of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

16 whether defense counsel's performance fell below the *Strickland* standard.  *Harrington v.*

17 *Richter*, 131 S. Ct. 770, 785 (2011).  Rather, when considering an ineffective assistance of

18 counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's

19 application of the *Strickland* standard was unreasonable."  *Id*.  As the Supreme Court explained

20 in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation

21 when the case involves review under the *Strickland* standard itself."  *Id*.

22

23

REPORT AND RECOMMENDATION - 13

Petitioner presented his ineffective assistance of counsel claim to the state courts in his personal restraint proceedings and the state courts rejected the claim.  The Washington Supreme Court Commissioner explained her conclusion as follows:

> Mr. Davis asserts that defense counsel should have advised him that the State could not prove burglary because he had a key to Ms. Hill's home with her knowledge and consent and some of his personal property was still located in the home, including items in her bedroom.  He claims he considered Ms. Hill's house to be his home.  In support of his petition, Mr. Davis included portions of a transcript of Ms. Hill's police interview, in which she told police she did not believe it was burglary, that Mr. Davis retained a key to the home after having lived there for several years, and that he visited two or three days a week after work to spend time with her son.

> Mr. Davis must show that counsel's performance fell below an objective standard of reasonableness in light of all the circumstances, and that in the absence of counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different.  *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012); *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Deficient performance is not shown by matters that go to trial strategy or tactics.  *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).  Mr. Davis fails to demonstrate that counsel did not investigate the facts.  Moreover, Mr. Davis ignores the portions of Ms. Hill's statement where she explained that Mr. Davis was no longer living in the home at the time of the assault, and that although he still visited after work two or three days a week, he was not expected to visit on that day.  Moreover, Ms. Hill explained that she and her friend so feared Mr. Davis that they put furniture under the front door knob and locked the bedroom door before retiring to the bedroom.  These facts were sufficient to demonstrate that Mr. Davis was uninvited and that he entered the home with felonious intent.  Accordingly, counsel was not deficient in failing to advise Mr. Davis that the State could not prove burglary.

(Dkt. 27, Ex. 16 at 2-3.)

Petitioner makes no showing that this decision of the state courts was contrary to, or constituted an unreasonable application of, United States Supreme Court precedent.  The record before this Court reveals that petitioner first attempted to withdraw his guilty plea in this matter, prior to sentencing, on the grounds that the plea was not voluntary because the victim had made

REPORT AND RECOMMENDATION - 14

threats to kill petitioner and harm his friends.  (*See* Dkt. 27, Ex. 19.)  When that effort was unsuccessful, petitioner attempted to undermine the validity of his guilty plea by claiming in his personal restraint proceedings that his attorneys erroneously told him that he had no defense to the burglary charge.  However, the fact that petitioner now believes he would have had a strong defense to the burglary charge does not mean that his attorneys, in their reasonable professional judgment, concurred with such an assessment.

The facts sets forth in the certification for determination of probable cause, which petitioner adopted as a part of his plea agreement, would certainly appear to support an assessment that petitioner was unlikely to prevail on the burglary charge at trial.  (*See id*., Ex. 18.)  And, as the state courts pointed out in their decisions rejecting petitioner's ineffective assistance of counsel claim, petitioner offers no evidence that his attorneys failed to investigate all of the facts surrounding the burglary charge, including the statements of Ms. Hill upon which petitioner relies to support his claim that he had a strong defense, before advising petitioner that he had no defense to the burglary charge.  (*See id*., Ex. 14 at 6, Ex. 16 at 2-3.)  Petitioner makes no showing that counsel's performance was deficient.  He has, at most, put at issue a decision on a strategic matter which is beyond the purview of a reviewing court.

Petitioner also fails to demonstrate any prejudice.  While petitioner contends now that absent counsel's erroneous advice he would have insisted on going to trial, the record does not support such an assertion.  Prior to entering his guilty plea, petitioner was facing three charges, including a charge of attempted murder in the second degree.  Petitioner's standard sentence range for the first degree assault charge to which he pleaded guilty was 117 to 147 months, and petitioner received the low end recommendation.  (*See* Dkt. 27, Ex. 18 at 8-11.)  Had petitioner proceeded to trial, and been convicted on all charges, his standard range sentence would have

REPORT AND RECOMMENDATION - 15

1   been 156 to 231 months, a potential sentence almost double that which he received by pleading

2   guilty.  (*See* Dkt. 27, Ex. 6 at 12.)  Petitioner's after-the-fact speculation that he would have been

3   better off proceeding to trial and risking conviction on the attempted murder charge disregards

4   the very real risk that he might have been convicted on the burglary charge, with an additional

5   weapon enhancement, regardless of his new found belief in the strength of his defense to the

6   burglary charge.  The state courts reasonably rejected petitioner's ineffective assistance of

7   counsel claim and, thus, petitioner's federal habeas petition should be denied with respect to his

8   third ground for relief.

9                                        Certificate of Appealability

10          A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

11   dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

12   from a district or circuit judge.  A certificate of appealability may issue only where a petitioner

13   has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C.

14   § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could

15   disagree with the district court's resolution of his constitutional claims or that jurists could

16   conclude the issues presented are adequate to deserve encouragement to proceed further."

17   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that

18   petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted

19   in his petition.

20                                             CONCLUSION

21          For the reasons set forth above, this Court recommends that petitioner's petition for writ

22   of habeas corpus be denied and that this action be dismissed with prejudice.  This Court also

23

REPORT AND RECOMMENDATION - 16

recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **June 13, 2016**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 17, 2016.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 23rd day of May, 2016.

_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 17